**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CAROLINA WATERWORKS, INC., ) | |
| ) | No. 2:12-CV-02568-DCN |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| TAYLOR MADE GROUP, LLC, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on a motion to compel discovery filed by plaintiff Carolina Waterworks, Inc. ("CWI"). In communications with the court on August 1, 2, and 5, the parties confirmed that they have resolved most of the issues addressed in CWI's motion. The only outstanding dispute involves three document requests propounded by CWI. The court thanks the parties for greatly narrowing their discovery disputes and, for the reasons that follow, denies the motion to compel.

## I. BACKGROUND

On September 6, 2012, plaintiff CWI filed a complaint in this court, alleging that defendants Taylor Made Group LLC and Taylor Made Products (collectively, "Taylor Made") had infringed one of CWI's patents. CWI filed an amended complaint on January 4, 2013.

CWI is a South Carolina corporation with a principal place of business in Goose Creek. Am. Compl. ¶ 1. Taylor Made is limited liability company, organized under the laws of Delaware, that does business throughout the United States, including South Carolina. Am. Compl. ¶ 3. Both companies sell recreational marine products. CWI's

1

amended complaint alleges that Taylor Made's T3C Sur-Moor Shackle Buoy ("the Shackle Buoy") and T3C Mooring Collar ("the Mooring Collar") infringe on Patent No. 6,955,574 ("the '574 Patent"), which CWI holds for its own shackle pocket buoy.  Am. Compl. ¶ 13.

The following diagrams represent the product covered by the '574 patent:



The Shackle Buoy and Mooring Collar look like this:



.

CWI argues that Taylor Made sells the Mooring Collar as an add-on to the Shackle Buoy, and that this pairing of devices violates its '574 patent.  Taylor Made counters that the Mooring Collar is incompatible with – and is not sold in conjunction with – the Shackle Buoy.  Taylor Made denies that it has infringed the '574 patent and, through a counter-claim filed with its answer on February 19, 2013, seeks a declaratory judgment of non-infringement.

2

CWI filed its motion to compel discovery on July 15, 2013.  Counsel for Taylor Made and CWI have both represented to the court that the parties resolved all disputes "except CWI's Document Request Nos. 27, 28, and 29."  See, e.g., Def.'s Resp. to Pl.'s Mot. to Compel 1.  This matter has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Georgia, 852 F.2d 788, 792 (4th Cir. 1988)).

## III.  DISCUSSION

CWI seeks an order compelling Taylor Made to produce the following documents:

- "Monthly, quarterly, and annual financial statements of each Defendant, including all attachments, since 2004,"  Pl.'s Doc. Request 27;

- "Yearly federal income tax returns of each Defendant, including all attachments, since 2004,"  Pl.'s Doc. Request 28; and

- "Balance sheets of each Defendant on a monthly, quarterly, and annual basis (both audited and unaudited) for the period January 1, 2004 to the present."  Pl.'s Doc. Request 29.

CWI contends that Taylor Made must provide these documents because "the accused infringer's profits or a reasonable royalty" are the possible measures of damages for patent infringement and, therefore, the requested information "is necessary to enable Plaintiff to conduct a proper accounting of its claims and to properly calculate possible damages."  Pl.'s Mot. to Compel 4.  Taylor Made responds that CWI misunderstands how patent infringement damages are calculated and, as a result, seeks financial information that is irrelevant to this litigation.

As an initial matter, Taylor Made Products is an unincorporated division of Taylor Made Group LLC.  According to a declaration filed by the president of Taylor Made Products, that unincorporated division does not file its own tax return or maintain its own balance sheet.  Defs.' Resp. Ex. 2 at ¶¶ 2-3.  Because Taylor Made Products does not keep these financial records, Taylor Made cannot comply with CWI's request that each defendant provide separate income tax returns and balance statements.[1]

---

[1] Moreover, as an unincorporated division of Taylor Made Group LLC, Taylor Made Products may "not [be] suable in its own right."  Spearing v. Nat'l Iron Co., 770 F.2d 87, 89 (7th Cir. 1985); see also United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir. 1982)

35 U.S.C. § 284, which governs remedies for patent infringement, states that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." Section 284 permits courts to award damages for patent infringement in one of two ways: (1) by calculating the patent holder's lost profits due to the infringement; or (2) by determining a reasonable royalty for the infringer to pay the patent holder. Patent Law Basics §18:3 (2012). A reasonable royalty is "the royalty which a licensee would be willing to pay and still make a reasonable profit from use of the patented invention." 60 Am Jur. 2d Patents § 956 (2013). Calculating a patentee's lost profits means that the court awards "full compensation for any damages the patent owner suffered as a result of the infringement." Id.; see also Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964) (defining a patentee's damages as "compensation for the pecuniary loss he . . . has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts") (internal citations omitted); King Instruments Corp. v. Perego, 65 F.3d 941, 948 (Fed. Cir. 1995) ("The question to be asked in determining damages is how much had the Patent Holder and Licensee suffered by the infringement. And that question is primarily: had the Infringer not infringed, what would the Patent Holder-Licensee have made?") (internal quotations omitted).  To prove that he or she is entitled to an award of lost profits, a patentee must generally show "(1) a demand for the patented product, (2) an absence of acceptable non-infringing substitutes, (3) the

---

("A corporation, in common parlance, is not regarded as distinct from its unincorporated divisions . . . ."), overruled on other grounds by Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990); Burns & Russell Co. of Balto. v. Oldcastle, Inc., 166 F. Supp. 2d 432, 440 (D. Md. 2001) (stating that unincorporated divisions lack capacity to be sued); E.E.O.C. v. St. Francis Xavier Parochial School, 77 F. Supp. 2d 71, 75 (D.D.C. 1999) (same) (collecting cases).

manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made." Calico Brand, Inc. v. Ameritek Imports, Inc., --- F. App'x ---, 2013 WL 3746163, at *6 (Fed. Cir. July 18, 2013) (citing Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc)); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

While a trademark or copyright holder can seek a damages award based on the infringer's profits, see 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(a)(1), no such relief is available to patent holders. Patent law allows a patentee to collect either its own lost profits or a reasonable royalty, not the infringer's profits. Even if CWI's patent infringement claim were ultimately successful, CWI would not be entitled to Taylor Made's profits on the Shackle Buoy and Mooring Collar.

The financial documents that CWI seeks in Document Request No. 29 would not assist its determination of damages. A balance sheet is a

> Financial statement that describes the resources under a company's control on a specified date and indicates where they have come from. It consists of three major sections: assets (valuable rights owned by the company), liabilities (funds provided by outside lenders and other creditors), and the owners' equity.

Merriam-Webster.com, http://www.merriam-webster.com/dictionary/balance sheet (last visited Aug. 1, 2013). Taylor Made's balance sheets would not provide any financial information that would enable CWI to calculate what a reasonable royalty would be or what CWI's own lost profits were. Taylor Made's tax returns, which do not break down the company's profits on a product-by-product basis, likewise would also not assist CWI in determining its own damages. Finally, Taylor Made asserts that it has already provided CWI with an analysis of the profits it has made from the Shackle Buoy and

Mooring Collar.  There is no indication that Taylor Made's monthly, quarterly, and annual financial statements would assist CWI in making its damages calculations.[2]

### III.  CONCLUSION

For the foregoing reasons, the court **DENIES** CWI's motion to compel, ECF No. 21.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 6, 2013**
**Charleston, South Carolina**

---

[2] CWI's Document Requests Nos. 27, 28, and 29 seek financial information dating back to 2004. Even if CWI were entitled to the documents it requests, it would not be entitled to documents dating from 2004 and 2005 because the statute of limitations in patent cases is six years.  35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").  Since this complaint was filed in 2012, CWI would only be entitled to Taylor Made financial information dating from 2006, if it were entitled to any of this information at all.