**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CAROLINA WATERWORKS, INC., ) | |
| ) | No. 2:12-CV-02568-DCN |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| TAYLOR MADE GROUP, LLC, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on a motion for <u>Markman</u> claim construction and for summary judgment of non-infringement filed by defendants Taylor Made Group, LLC and Taylor Made Products (collectively, "Taylor"), ECF No. 34. Also pending is a motion for partial summary judgment filed by plaintiff Carolina Waterworks, Inc. ("CWI"), ECF No. 57. For the reasons stated below, the court grants summary judgment in Taylor's favor and declares that Taylor does not infringe any claim of U.S. Patent No. 6,955,574 ("the '574 Patent"), a patent for a shackle pocket buoy held by CWI. Because the court grants summary judgment in Taylor's favor, the court denies CWI's motion for partial summary judgment.

**I. BACKGROUND**

CWI is a South Carolina corporation with a principal place of business in Goose Creek. Am. Compl. ¶ 1. L. Keith Rogerson, the inventor of the '574 Patent, assigned the patent's rights to CWI. Am. Compl. ¶ 7. Taylor Made Group, LLC is a limited liability company organized under the laws of Delaware that does business throughout the United States, including South Carolina. Am. Compl. ¶ 3. Taylor Made Products is an

1

unincorporated division of Taylor Made Group, LLC.  Answer ¶ 2.  Both Taylor Made Group, LLC and CWI sell recreational marine products.

On September 6, 2012, CWI filed a complaint in this court, alleging patent infringement against Taylor.  CWI filed an amended complaint on January 4, 2013.  CWI's amended complaint alleges that Taylor's Sur-Moor Shackle Buoy ("the Shackle Buoy"), alone and in combination with Taylor's T3C Mooring Collar ("the Mooring Collar"), infringe on the '574 Patent.  Am. Compl. ¶ 13. Taylor denies that the Mooring Collar is compatible with – much less sold in conjunction with – the Shackle Buoy, and denies CWI's patent infringement claims.  Through a counter-claim filed with its answer on February 19, 2013, Taylor seeks a declaratory judgment of non-infringement.

On August 28, 2013, Taylor filed the pending motion for summary judgment and for Markman claim construction.  CWI opposed Taylor's motion on September 16, 2013, and Taylor timely replied.  The court held a hearing on the motion on October 10, 2013.  One week after the hearing, CWI filed the pending motion for partial summary judgment.  All of these matters have been fully briefed and are ripe for the court's review.

## II.  STANDARDS

In a patent case, the court applies the law of the appropriate regional circuit when determining whether the grant of summary judgment is proper.  Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc., 731 F.3d 1271, 1275 (Fed. Cir. 2013).  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). At the summary judgment stage, the court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

Taylor's motion for summary judgment and for Markman claim construction is dispositive of the case. As a result, the court discusses it before briefly turning to CWI's motion for partial summary judgment.

**A.  Taylor's Motion for Summary Judgment & a Declaration of Non-Infringement**

Taylor seeks summary judgment in its favor, as well as a declaration that it has not infringed the '574 Patent. As the Federal Circuit has explained, determining patent infringement "is a two-step process." Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)).[1] First, the court must construe the patent's claims, that is, the court must ascertain the meaning and scope of the patent's claims. Id. Second, the court must compare the properly construed claims to the accused device. Id.

**1.  Markman claim construction**

Claim construction is the process by which the court determines "the meaning and scope of the patent claims asserted to be infringed." Markman, 52 F.3d at 976. Claim construction is a matter of law that must be decided by the court. Id. at 979. A court must construe the patent's claims before determining whether a patent has been infringed,

---

[1] Though the court applies the procedural law of the Fourth Circuit when determining whether summary judgment is appropriate, it must apply the law of the Federal Circuit when construing the claims of the patent or patents at issue.

and must give "the claims the same meaning for purposes of both the infringement and validity analyses."  Z-Man Fishing Prods., Inc. v. Renosky, No. 11-cv-00428, 2012 WL 2264260, at *3 (D.S.C. Apr. 27, 2012) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001)).  The words of a claim are generally given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).

When construing a patent's claims, a court first considers the intrinsic evidence of a claim's meaning:  (1) the claims themselves; (2) the specification;[2] and (3) the prosecution history.  Markman, 52 F.3d at 979 (quoting Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1561 (Fed. Cir. 1991)).  After considering the intrinsic evidence, a court may also consider extrinsic evidence – "that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996); see also Markman, 52 F.3d at 980 (stating that extrinsic evidence may be useful to explain scientific principles, technical terms, terms of art, and the state of the prior art at the time of the invention).  Reliance on extrinsic evidence to construe a claim is "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence."  Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 706 (Fed. Cir. 1997).  While judges are encouraged to consult technical treatises and dictionaries when construing a patent's claims, they cannot employ

---

[2] The specification is "a written description of the invention" that is included in the patent application.  35 U.S.C. §§ 111-12.

a dictionary definition that contradicts "any definition found in or ascertained by a reading of the patent documents." Vitronics Corp., 90 F.3d at 1584 n.6.

The parties agree that the court must construe the following terms contained in the '574 Patent: "support plate;" "external force;" "connected;" and "attached"/"attaching."

### a. "Support plate"

Taylor contends "support plate" should be construed as

> A flat, thin plate seated in and attached to the bottom of an indentation or pocket in a mooring buoy which is also attached to a mooring line via a fastening device, e.g., a shackle, and sometimes to an anchor chain, such that external forces are diffused and act upon such plate rather than the buoy components.

Defs.' Mot. for Summ. J. 11. CWI counters that "support plate" should be construed as

> A component that is disposed in the pocket in a mooring buoy and connected to a fastening device, e.g. a shackle, such that a force acting on a fastening device or a line is diffused by the support plate before being transferred to the body or shell of the buoy.

Pl.'s Opp'n to Mot. for Summ. J. 26.

Taylor's argument to the contrary, the '574 Patent does not limit itself to a support plate that is flat and thin. While Figures 1 and 3 of the '574 Patent do show flat, thin plates that are attached to the bottom of a buoy's shackle pocket, depictions in the patent's specification are not the exclusive embodiment of the patent. Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration." (citing Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc., 222 F.3d 951, 956 (Fed. Cir. 2000))). Similarly, Taylor's argument that "we all know what a plate is," Draft Hr'g Tr. 25:15, Oct. 10, 2013, rings

5

hollow because a claim term's meaning is not necessarily a general dictionary definition. Phillips, 415 F.3d at 1321-22.

For these reasons, the court construes "support plate" as "a component that is seated and secured in the pocket in a mooring buoy and that is also attached to a fastening device, e.g., a shackle, such that external forces are diffused and act upon the support plate rather than the buoy components." This definition recognizes that the support plate must be attached to both the buoy and the shackle but that the support plate need not be flat and thin.

### b. "External force"

The parties agree that "external force" means "[a] force, e.g., wave action, applied to a mooring buoy via the mooring or anchor line." Defs.' Mot. for Summ. J. 11; Pl.'s Opp'n 30. As a result, the court construes the term "external force" in the manner agreed to by the parties.

### c. "Connected"

At the hearing, Taylor's counsel agreed to adopt CWI's proposed construction of the term "connected." Draft Hr'g Tr. 23:25-24:3, Oct. 10, 2013. The court therefore construes the term "connected" to mean "mated, coupled or linked together such that a force can be transferred from one component to another."

### d. "Attached" and "Attaching"

Taylor contends that the words "attached" and "attaching" should be construed to mean "[a] permanent, secure connection such as by adhesives, screws, rivets, bolts, or similar mechanical attachments." Defs.' Mot. for Summ. J. 11. CWI contends that

6

"attached" and "attaching" should be construed to mean "seated or secured in a way that permits forces to be transferred." Id. at 29.

Taylor presents an overly-narrow construction of the terms by suggesting that they can only apply to a permanent connection secured by adhesives, screws, rivets, bolts, and the like. On the other hand, CWI's suggested construction of "attached" and "attaching" is much broader than that found in the '574 Patent.

The court construes "attached" to mean "securely joined or affixed in a way that permits forces to be transferred." Similarly, the court construes "attaching" to mean "securely joining or affixing in a way that permits forces to be transferred." These constructions are supported by the specification, which uses the term "attached" to describe the relationship between components that are secured to each other by welding, adhesives, screws, rivets, bolts or similar mechanical attachments. These constructions are further supported by claim 25, which explains that the shackle is attached to the support plate, and that both the shackle and the support plate are attached within the shackle pocket. Finally, "although [the c]ourt need not consult extrinsic evidence because the intrinsic evidence is clear," these constructions fall within the dictionary definition of "attach. 180s, Inc. v. Gordini U.S.A., Inc., 699 F. Supp. 2d 714, 721 (D. Md. 2010) (citing Phillips, 415 F.3d at 1324).

**2. Determining infringement**

Now that the court has construed the disputed claim terms listed above, it must compare Taylor's allegedly infringing products to the claims of the '574 patent in order to determine whether infringement has occurred. CWI alleges that Taylor has infringed the '574 Patent both directly and indirectly.

### a. Direct infringement

The court first considers whether Taylor's products directly infringe the '574 Patent. Direct infringement occurs when an entity "makes, uses, offers to sell, or sells any patented invention," without authorization, during the term of the patent. 35 U.S.C. § 271(a). Direct infringement may consist of either literal infringement or infringement under the doctrine of equivalents. Literal infringement occurs when "each and every limitation set forth in a patent claim appears in an accused product." Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed. Cir. 2005) (internal quotations omitted). The doctrine of equivalents imposes liability on a party whose accused product or process contains an "insubstantial" change from the claimed invention. TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1376 (Fed. Cir. 2008). The accused product or process is considered equivalent to the patented product or process when the accused device "performs substantially the same function in substantially the same way to obtain the same result." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 38-40 (1997).

At bottom, Taylor argues that its products have no support plates, that support plates are a key limitation included in the '574 Patent, and that Taylor's products cannot, therefore, infringe the '574 Patent. CWI responds that the Shackle Buoy does contain a support plate, namely, the PVC tube that runs through the center of the Taylor buoys.

Even if the court were to find that the Shackle Buoy, alone or in combination with the Mooring Collar, did include a support plate, Taylor still would not have committed infringement. The '574 Patent claims a buoy with a shackle that is connected or attached to a support plate, which is in turn connected or attached to an anchor chain. A person

using CWI's invention attaches the boat's mooring line to the CWI buoy's support plate via a shackle, and the anchor chain has previously been securely fastened to opposite side of the support plate. See '574 Patent claim 17, col. 7, lines 3, 16-17 (claiming "A mooring device for a buoy comprising . . . a support plate disposed in the pocket, the support plate connected to the shackle <u>and to</u> an anchor chain" (emphasis added)). Taylor's Shackle Buoy and Mooring Collar work differently. A person who uses a Shackle Buoy, with or without a Mooring Collar, connects the boat's mooring line directly to the anchor chain. This is a fundamentally different usage than the one described in the specification and claims of the '574 Patent. See col. 2, lines 53-56 ("For instance, a line from a vessel is attached to the shackle, which is attached to the support plate. An anchor chain is also attached to the support plate.") (references to Fig. 1 omitted); col. 6, lines 21-24 (claim 1 includes "a support plate disposed in the pocket, the fastening device connected to the support plate . . . ."); col. 8, lines 45-48 (claim 35 includes "a support plate disposed in the pocket, the fastening device and the line connected to the support plate such that an external force acting on the fastening device or the line is diffused by the support plate"). Though CWI argues to the contrary, the anchor chain and the PVC sleeve inside Taylor's Shackle Buoy are neither "connected" nor "attached" by way of the friction between them. Even when the Mooring Collar is added to the Shackle Buoy, the anchor chain and mooring line are still connected directly to one another – not to any support plate that may be a feature of Taylor's products. See DeRuscio Decl. ¶ 4 ("The function of the T3C Mooring Collar is to protect the buoy and, specifically, the tube running through that buoy from frictional damage from the sliding chain. It does not attach to the mooring or anchor lines or the shackle."). While the

9

mooring line and anchor chain may come into contact with the Shackle Buoy and/or the Mooring Collar, they are not connected or attached to those products within the meaning of the '574 Patent.

As a result, the Shackle Buoy and the Mooring Collar do not directly infringe the '574 Patent, either literally or by the doctrine of equivalents.

### b. Indirect infringement

The court next considers whether Taylor has indirectly infringed the '574 Patent. Indirect infringement occurs when a party either "actively induces infringement of a patent" or commits contributory infringement by selling or offering to sell "a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ."  35 U.S.C. § 271(b)-(c).

### i. Active inducement

CWI alleges that Taylor actively induces infringement by selling the Shackle Buoy in conjunction with the Mooring Collar.  Taylor responds that it does not sell the Shackle Buoy and Mooring Collar together, does not make or use these products as a package, and does not advertise these products together.

Active "inducement gives rise to liability only if the inducement leads to actual infringement. That principle, that there can be no indirect infringement without direct infringement, is well settled." Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1308 (Fed. Cir. 2012) (internal citations omitted), cert. dismissed, 133 S. Ct. 1520 (U.S. 2013) and cert. dismissed, 133 S. Ct. 1521 (U.S. 2013); see also Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1341 (Fed. Cir. 2008) ("[A] finding of inducement

requires a threshold finding of direct infringement – either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." (citations omitted)).  Unlike direct infringement, which is a strict liability tort, an accused inducer must act with "knowledge that the induced acts constitute patent infringement." Global-Tech Appliances, Inc. v. SEB S.A., --- U.S. ---, 131 S. Ct. 2060, 2068 (2011). However, "inducement does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer.  It is enough that the inducer causes, urges, encourages, or aids the infringing conduct and that the induced conduct is carried out."  Akamai Techs., 692 F.3d at 1308 (internal quotations omitted).

The court has already found that Taylor's Shackle Buoy and Mooring Collar, even when used in combination, do not directly infringe the '574 Patent.  As a result, there can be no induced infringement.  Moreover, while CWI provides invoices from a third party marine supply business that indicate that some customers have ordered a Shackle Buoy and a Mooring Collar at the same time, see, e.g., Pl.'s Opp'n Ex. N at 2, 3, this evidence does not establish specific instances of direct infringement.  Without more, these invoices do not show that any of these customers ever used the Mooring Collar and Shackle Buoy together, or that Taylor ever marketed them as a package.

### ii.  Contributory infringement

Finally, CWI argues that Taylor's Shackle Buoy contributorily infringes the '574 Patent the moment it is put to use, "i.e., when external forces acting on the fastening device are diffused by the support plate."  Pl.'s Opp'n 33.  CWI makes the conclusory assertion that Taylor's product "has no substantial, non-infringing use."  Id.  Taylor, on

the other hand, states that the Mooring Collar is a product that pre-dates the '574 Patent and is wholly produced by a third party.

As with active inducement, a plaintiff seeking to prove contributory infringement must prove an act of direct infringement. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1320 (Fed. Cir. 2009). Additionally, a plaintiff who wishes to succeed on a claim of contributory infringement must also "show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" Id. (quoting Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005)).

Because the Shackle Buoy, used alone or in combination with the Mooring Collar, does not directly infringe the '574 Patent, Taylor cannot have committed contributory infringement. Additionally, the Mooring Collar has a substantial non-infringing use, that is, to reinforce the neck of any Taylor buoy that contains a tube through its center. Indeed, the Mooring Collar was originally designed for use with a different Taylor buoy. DeRuscio Decl. ¶ 5.

### B. CWI's Motion for Partial Summary Judgment

CWI's motion for partial summary judgment seeks a declaration that the Shackle Buoy infringes the '574 Patent, or, in the alternative, that the Shackle Buoy and Mooring Collar infringe the '574 Patent when used in combination. Because the court grants Taylor's motion for summary judgment, it must deny CWI's motion.

### III.  CONCLUSION

For the foregoing, the court **GRANTS** defendants' motion for <u>Markman</u> claim construction and for summary judgment of non-infringement, ECF No. 34.  The court **DENIES** plaintiff's motion for partial summary judgment, ECF No. 57.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 9, 2014**
**Charleston, South Carolina**

13